UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1041
_____

HEATHER R. OBERDORF;
MICHAEL A. OBERDORF, her husband,
                          Appellants
v.

AMAZON.COM INC., a
Washington Corporation
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 4-16-cv-01127
District Judge: Honorable Matthew W. Brann
_____

Argued En Banc February 19, 2020

Before: SMITH, *Chief Judge*, AMBRO, CHAGARES, JORDAN, HARDIMAN, SHWARTZ, KRAUSE, RESTREPO, BIBAS, PORTER, MATEY, PHIPPS, SCIRICA, and ROTH, *Circuit Judges*

─────────

CERTIFICATION OF QUESTION OF LAW[1]
─────────

SMITH, *Chief Judge.*

To the Honorable Justices of the Pennsylvania Supreme Court:

---

[1] We certify pursuant to 3d Cir L.A.R. 110.1 (2011), 3d Cir. I.O.P. 10.9 (2018), Pa. R. App. P. 3341 (2020), and Pa. Sup. Ct. I.O.P. 8 (2019).

This matter came before us on appeal from an order of the United States District Court for the Middle District of Pennsylvania granting Defendant Amazon.com, Inc.'s (Amazon) motion for summary judgment. It involves predicting the Pennsylvania Supreme Court's application of the Restatement (Second) of Torts § 402A (Am. Law Inst. 1965) to an e-commerce business, which raises important and unresolved questions regarding state product liability law appropriate for certification. We therefore respectfully request that the Supreme Court of Pennsylvania grant this petition.

## I.    BACKGROUND

Amazon.com is a well-known website on which products are offered for sale in one of three ways: (1) Amazon sells and ships the goods to the consumer; (2) a third-party vendor sells the merchandise on Amazon.com and Amazon "fulfills" the order by storing, packaging, and shipping the products on the vendor's behalf; and (3) a third-party vendor sells the goods on Amazon.com but stores, packages, and ships the products itself.[2]  This case involves the third option.

Heather Oberdorf purchased a dog collar on Amazon.com from a third-party vendor identified as "The Furry Gang."[3]  *Oberdorf v. Amazon.com, Inc.*, 930 F.3d 136,

---

[2] In order to offer products on Amazon.com, a third-party vendor must comply with the Amazon Services Business Solutions Agreement. According to its terms and conditions, vendors determine the products to list, obtain their own stock, and generally set their own pricing. Amazon, however, maintains some control over sales transactions. For example, it processes all payments, requires all communications between a third-party vendor and a buyer to occur through its communications platform, mandates indemnification protection and liability insurance in its favor, and imposes various rules regarding shipping and returns.

[3] Amazon did not design, manufacture, have title to, or possess the dog collar.

142 (3d Cir.), *vacated and reh'g en banc granted*, 936 F.3d 182 (3d Cir. 2019). About a month later, she attached a retractable leash to this collar to take her dog for a walk. During the walk, the D-ring on the collar broke. The leash recoiled, hitting Oberdorf's face and eyeglasses. As a result, Oberdorf is permanently blind in one eye.

Neither Amazon nor Oberdorf has been able to locate The Furry Gang or the manufacturer of the dog collar.[4] Oberdorf and her husband therefore sued Amazon, claiming that it is strictly liable under § 402A because it "facilitated and participated in the sale and distribution of the subject dog collar."[5] Oberdorf Br. 4. Amazon, averring that it is not strictly liable, moved for summary judgment, which the District Court granted.

On appeal, a divided panel vacated the summary judgment order in part. The Panel (Shwartz, Scirica, & Roth, JJ.) disagreed about (1) how Pennsylvania applies § 402A and (2) whether Amazon is strictly liable for Oberdorf's injuries. The majority (Shwartz & Roth, JJ.) held that under the four-factor test articulated in *Francioni v. Gibsonia Truck Corp.*, 372 A.2d 736, 738–39 (Pa. 1977), Amazon is strictly liable.[6] In contrast, the dissent (Scirica, J.) determined that Pennsylvania's § 402A analysis has two independent steps. As a threshold matter, the defendant must be engaged in the business of selling the kind of product at issue, which requires a transfer of either ownership or

---

[4] Amazon's private investigator also failed at this task.
[5] The Oberdorfs' other claims are not raised in this petition.
[6] *See also Musser v. Vilsmeier Auction Co., Inc.*, 562 A.2d 279, 282 (Pa. 1989) (fleshing out the four *Francioni* factors).

possession of the product. If that condition is satisfied, a court then determines whether the four *Francioni* factors demand the imposition of strict liability. Amazon did not transfer a right of ownership in or possession of the dog collar, so the dissent held that the predicate step was unmet. The dissent alternatively concluded that the *Francioni* factors weigh against applying strict liability.

Amazon filed a petition for rehearing, which was granted. This Court sitting en banc heard oral argument on February 19, 2020, but we were unable to predict, based on existing case law, if and how the Pennsylvania Supreme Court would apply § 402A to e-commerce businesses like Amazon. This petition resulted.

## II.     DISCUSSION

The Supreme Court of Pennsylvania adopted strict liability for defective products, specifically the Restatement (Second) of Torts § 402A, in *Webb v. Zern*, 220 A.2d 853 (Pa. 1966).

> **§ 402A.** Special Liability of Seller of Product for Physical Harm to User or Consumer
>
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>    (a) the seller is engaged in the business of selling such a product, and
>    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
>    (a) the seller has exercised all possible care in the preparation and sale of his product, and
>    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A.  Subsequently, the Court has explored how strict liability applies in non-traditional contexts.  *See, e.g.*, *Francioni*, 372 A.2d at 738–39 (analyzing whether vehicle lessor was strictly liable); *Nath v. Nat'l Equip. Leasing Corp.*, 439 A.2d 633, 635–36 (Pa. 1981) (employing concept of tangentiality to determine if financial lessor was liable under § 402A); *Musser*, 562 A.2d 279 (assessing whether auction house was strictly liable); *Cafazzo v. Cent. Med. Health Servs., Inc.*, 668 A.2d 521 (Pa. 1995) (examining strict liability for medical services).

E-commerce businesses present a novel situation, raising several unresolved questions.  First, does Pennsylvania's test for applying § 402A involve one or two steps?  And second, if there are two steps, what constitutes each step?

## A.

As to applying § 402A to e-commerce businesses, what is the correct test?  We perceive at least two plausible options—either a one-step method based on *Francioni* and *Musser* or a two-step approach based on *Francioni* and/or *Cafazzo*.

*Francioni* may have crafted a one-step analysis that requires a court to determine whether an e-commerce business is a § 402A "seller" by weighing four policy factors: (1) is the defendant the only member of the marketing chain available to the injured party for redress; (2) does imposition of strict liability serve as an incentive to safety; (3) is the defendant in a better position than the consumer to prevent circulation of the defective product; and (4) can the defendant distribute the costs of strict liability?  *See* 372 A.2d at

739; *see also Nath*, 439 A.2d at 635–36 (further developing the factors); *Musser*, 562 A.2d at 282–83 (elaborating on the analysis and limiting the weight of the fourth factor).

On the other hand, *Francioni* can be interpreted as fashioning a two-step analysis. After discussing the four policy factors, the Court stated, "[e]ngagement in the business of 'selling' [ ] products is, of course, a basic requirement." 372 A.2d at 739. This sentence and the surrounding paragraph suggest that a prerequisite to the application of the four policy factors is a determination of whether a defendant is in the business of selling the kind of product at issue. *See id.* at 739–40. If a defendant does not sell that kind of product, then there is no need to consider the four *Francioni* factors because strict liability is inapplicable. Only when a defendant sells the kind of product at issue does the analysis then turn to the four policy factors. *Cafazzo* also appears to endorse a two-step approach. *See* 668 A.2d at 523–24.

### B.

It is unclear whether § 402A involves a one-step or two-step analysis, but if it is subject to a two-step test, we respectfully request clarification as to how to perform the first step—determining whether a defendant is in the business of selling the kind of product at issue.

Amazon asserts that a "seller" must transfer either ownership or some kind of legal right to possession. This rule-like definition finds some support in Pennsylvania

case law: almost every case imposing strict liability includes such a transfer.[7] *See, e.g.*, *Burch v. Sears, Roebuck & Co.*, 467 A.2d 615, 618 (Pa. Super. Ct. 1983). Various courts outside Pennsylvania also appear to support a more bright-line approach. *See, e.g.*, *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422–25 (6th Cir. 2019) (interpreting ambiguously defined Tennessee statutory term "seller" to include "any individual regularly engaged in exercising sufficient control over a product in connection with its sale, lease, or bailment, for livelihood or gain" but holding Amazon did not meet this definition); *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 144 (4th Cir. 2019) (holding Amazon was not a "seller" of a third-party vendor's merchandise under Maryland product liability law because it never held title); *Stiner v. Amazon.com, Inc.*, 120 N.E.3d 885, 891 (Ohio Ct. App.) (concluding Amazon was not a "seller" under Ohio statutory definition encompassing a person that, in the course of business, sells or places a product in the stream of commerce), *appeal allowed*, 156 Ohio St. 3d 1487 (Ohio 2019); *see also* Restatement (Third) of Torts: Prod. Liab. § 20 (Am. Law Inst. 1998).

Yet Pennsylvania law "do[es] not slavishly adhere to the language of 402A."[8] *Cafazzo*, 668 A.2d at 523. Past cases disregard artificial distinctions that frustrate the intended purposes underlying strict liability. *See Francioni*, 372 A.2d at 738–39; *Hoffman*, 452 A.2d at 1355. And courts consistently employ a fact-intensive approach to

---

[7] One prominent, although unsettled, exception is for a manufacturer's representative. *See, e.g.*, *Hoffman v. Loos & Dilworth, Inc.*, 452 A.2d 1349 (Pa. Super. Ct. 1982) (finding sales agent strictly liable).

[8] For example, Pennsylvania courts commonly employ the more encompassing term "supplier" rather than "seller." *See, e.g.*, *Musser*, 562 A.2d at 281–82.

7

determine whether a defendant can be held strictly liable. *See Cafazzo*, 668 A.2d 521; *Musser*, 562 A.2d 279; *Francioni*, 372 A.2d 736; *Hoffman*, 452 A.2d 1349. A bright-line rule therefore seems inconsistent.

Perhaps the concept of "tangentiality" is the appropriate framework through which we are to determine if a defendant is selling the kind of product at issue. Pennsylvania courts often consider whether a defendant's role in a transaction is too tangential or attenuated to impose strict liability. *See, e.g.*, *Cafazzo*, 668 A.2d at 524–25 (medical surgeon's role in selling implant was tangential); *Musser*, 562 A.2d at 281–82 (ordinary auctioneer played tangential role); *Nath*, 439 A.2d at 633–36 (unlike supplier or manufacturer, financial lessor was tangential because it circulated funds rather than products); *Hoffman*, 452 A.2d at 1352–54 (product sales representative was not tangential). That said, we are uncertain about the role and weight of tangentiality in the § 402A analysis.

### III. QUESTION

This is an issue of first impression and substantial public importance, yet we cannot discern if and how § 402A applies to Amazon.[9] We are, as a result, unable to predict how the Pennsylvania Supreme Court would rule in this dispute. NOW THEREFORE, the following question of law is certified to the Supreme Court of Pennsylvania for disposition according to the rules of that Court:

---

[9] *See* Pa. R. App. P. 3341(c).

Under Pennsylvania law, is an e-commerce business, like Amazon, strictly liable for a defective product that was purchased on its platform from a third-party vendor, which product was neither possessed nor owned by the e-commerce business?

We shall retain jurisdiction over the appeal pending resolution of this certification.

**A True Copy:**

Patricia S. Dodszuweit, Clerk